## 8089

## STATE v. DETYENS.

THE SURETIES OF A COUNTY TREASURER are liable for commutation tax received by him for work on the public highways and not paid out according to law, although he received the money after the date fixed by statute for its payment.

Before GARY, J., Georgetown, April, 1911.   Affirmed.

Action by the State of South Carolina against James F. Detyens and American Bonding Company of Baltimore. The bonding company appeals from the following order sustaining a demurrer to its answer:

"This action was brought by the State against James F. Detyens as principal, and the American Bonding Company of Baltimore as surety, on the official bond of Detyens as county treasurer of Georgetown county.

"It is alleged in the complaint and specifically admitted in the answer of the American Bonding Company that Detyens, as county treasurer, collected certain moneys as taxes imposed upon persons engaged in gathering oysters, catching fish, etc., which tax is provided for under the act of 1906, and that the money so collected was not turned over to Detyen's successor in office.   The bonding company sets up a defense for failure of its principal in this respect that the fish stamps were left in the treasurer's office by the predecessor of Detyens, and were never receipted for by the said Detyens as county treasurer or so as to render his official bond responsible therefor.   The State interposed a demurrer to this defense upon the ground that the allegations contained therein fail to constitute a defense.

"I am of the opinion that the demurrer in this respect should be sustained for the reason that the tax imposed by the act of 1906, commonly known as the fish stamp tax, has been paid by the individuals and collected by the treasurer as a tax upon fish taken in the public waters of the State,

and such tax is a part of the public revenue. The fact that Detyens did not receipt for the unsold stamps on hand when he took charge of the office cannot affect the case. He actually received them; his answer so specifically admits, and sold them to persons liable for the tax, and having failed to account for the money so collected, his surety is liable to the public therefor.

"As a further defense to the cause of action set up by the plaintiff, the defendant American Bonding Company alleges in the fourth and fifth paragraphs of its answer that included in the amount of the admitted shortage are items erroneously charged against the said county treasurer for commutation of road duty collected by the treasurer after the expiration of the time during which by law he was entitled to collect the same; that the treasurer had no authority to receive the same, and that it, as surety upon the bond, cannot be held liable therefor. The plaintiff demurs to the defenses set up in these paragraphs of the answer upon the ground that they fail to state facts sufficient to constitute a defense. Defendant contends that the law did not require or allow the collection of the highway tax at the time of the actual collection thereof, and that having been collected under such circumstances no liability rested upon it as surety to account; that if there is any liability whatsoever it rests upon James F. Detyens as a personal and private obligation and not as an official trust. To sustain this view, defendant relies upon the case of the *State* v. *White,* 10 Richardson Law 442, and *Elliott* v. *Jeter,* 59 S. C. 483. An examination of the White case will show that the money for which the surety of the ordinary was sought to be held was neither taxes nor public revenues of any kind, nor was it money received by the ordinary *colore officit.* The Court said the only way he could receive it was as a mere personal trust, for which he alone was responsible. In the Jeter case neither tax nor public revenue was involved; the liability was to individuals

for personal funds. In that case the Court held that if the probate judge had no jurisdiction to partition realty, any funds coming into his hands from a partition sale could not create a liability under his official bond. The defendant cited cases from other States which seem to be more nearly in accord with its contention, but the great weight of authority is to the contrary. In the case of *Town of Pawlet* v. *Kelly,* 69 Vt. 401, it is said: 'It is no defense herein that the selectmen included the unpaid highway tax for 1891 and 1892 in the tax bill for 1893. If the taxpayer paid Kelly the amount of the tax, the money became the money of the town, and the surety liable if the collector did not pay it over. If the tax levy was invalid, it was no defense as to the non-payment of the moneys in fact collected.'

"In *Fuller* v. *Calkins,* 22 Iowa 305, it is said: 'The substance of the whole matter, however, is that, though the collector may not have been legally bound to receive this money at the time, yet he did receive it, and, as we are bound to presume, executed the usual and proper receipts, and entered the proper memorandum on the tax list at the time, or so soon as the same was placed in his hands. By so doing he was in no just sense the mere custodian or trustee of the taxpayers, holding the funds for their use and alone liable to them, or individually to the government, for the faithful application of the funds. This was public money, funds in his hands by virtue of his office, revenue which he was bound to account for and pay over; and, by the very terms of the bond, the sureties were liable therefor. As was said in *Warren County* v. *Ward* (21 Iowa, 84) the officer was perhaps not bound to take the money, but he *did,* accepting is as collector, and he is therefore bound for it as money received by virtue of his office.'

"In the monographic note to the case of *Feller* v. *Gates,* 91 Am. St. Rep. 558, it is said: 'Where, however, money is received by a treasurer as public funds, and in his capacity as treasurer, he or his sureties cannot, by the weight of

authority, attack the validity of the means by which it was raised, in order to turn his official trust into a private one, or make his appropriation of such money an extra official delinquency, and, therefore, not a breach of his official bond. Thus, where money is borrowed or raised by taxation, and paid into the treasury, it is no defense that the board which raised the money, in so doing, exceeded its lawful authority. As is said in *Cheboygan Co.* v. *Erratt,* 110 Mich. 156, 67 N. W. 1117: 'We think it altogether clear that, when it is shown that moneys have actually come into the hands of the treasurer as treasurer, neither he nor his bondsmen can avoid liability by showing that either irregularities exist in the proceedings by which such moneys were collected, or that there was no authority to enter into the agreement which resulted in the receipt of the money by the county. It is enough to impose upon the treasurer an active duty that the county has received the money, and the obligation on the bond exists when the money finds its way into his hands as treasurer.' So it is no defense for failure to pay over or account. for money paid into the treasury as taxes, that they were collected without warrant: *Berrien Co.* v. *Bunbury,* 45 Mich. 79, 7 N. W. 704; or that the levy was irregular: *Mahaska Co.* v. *Ingalls,* 14 Iowa 170.' * * * In the cases above considered, and by the authorities generally, no distinction is made between a treasurer and his sureties, so far as concerns the right of either to question the legality of the means by which money paid to and received by him as treasurer was raised. And in this case, page 554, a number of authorities are cited as sustaining the rule that sureties are even liable for taxes collected under an unconstitutional statute.

"It is admitted that the highway tax was collected by Detyens, as county treasurer, and no excuse for failure to turn it over to his successor is given other than that it was paid subsequent to the time fixed by statute. The State requires certain citizens to perform manual labor upon the

public highways each year, but grants to each the privilege of commuting such service by the payment of a fixed amount of money before the first day of March. The payment of money within the time prescribed is a privilege granted the citizen, of which he may avail himself or not in accordance with his desire, but if he fails to pay within the required time, he cannot complain upon being required to labor upon the highway for the stipulated number of days. On the other hand, if the treasurer permits the payment, and in fact receives the tax after the expiration of the prescribed time, the citizen being thereby relieved of performing the labor, the money so collected is a public revenue, and is received by the county treasurer by virtue of his office. This, at most, was a mere irregularity in the collection thereof, which should not, according to an unbroken line of authorities, excuse the treasurer from turning it over to his successor, and could not relieve the surety from liability therefor. The various persons liable to perform road duty have only tardily paid the tax, and the treasurer having elected to receive it, neither he nor the sureties will now be heard to say that it was irregularly or improperly collected. Having been thus intrusted with this fund by virtue of his office, it was the duty of Detyens to turn it over to his successor, as provided by section 695, Code of Laws, 1902, volume I. The demurrer to the fourth and fifth paragraphs of the answer must, therefore, be sustained."

The defendant appeals on the following exceptions:

First: "Because the Circuit Judge erred in sustaining the demurrer to the defense set up in the sixth paragraph of the answer of the defendant, the American Bonding Company of Baltimore, the error assigned being that it was alleged in said paragraph and admitted by the demurrer that the said Detyens, county treasurer, never receipted for, nor did he assume any responsibility whatever for the fish stamps therein mentioned, and his surety was never in law responsible to the State or the county for said fish stamps.

Second: "Because the Circuit Judge erred in sustaining the demurrer to the defense set up in the seventh paragraph of the defendant's answer, the error assigned being that the amount therein mentioned as charged against the county treasurer as moneys received by him in commutation of road duty was alleged in the answer and admitted by the demurrer to have been received by the county treasurer after the expiration of the time during which by law he was entitled to collect the same, and the surety was therefore not responsible for his failure to pay over the same.

Third: "Because the Circuit Judge erred in sustaining the demurrer to the defense set up in the eighth paragraph of the defendant's answer, the error assigned being that the answer having alleged that the said county treasurer received the amounts stated in said paragraph in commutation of road duty after the expiration of the time when he was by law authorized to collect the same, and that the surety was therefore not responsible for his failure to pay over the same.

Fourth: "Because the Circuit Judge erred in not holding that if there was any liability resting upon the county treasurer because of the collection of the commutation of road duty, the same created simply a personal liability on the part of the county treasurer, and was not a liability for which his bondsman would be responsible."

*Messrs. Mordecai & Gadsden, Rutledge & Hagood,* for appellant, cite: *The surety is not responsible for money which the treasurer had no authority to collect:* 10 Rich. L. 442; 59 S. C. 483; 11 Mo. 447; 36 Fed. R. 172; 65 Cal. 358; 16 Brad. 612; 156 Ill. 499; 38 N. J. Eq. 586; 60 N. Y. 421; 8 La. Ann. 95; 17 N. Y. 242; 36 Fed. 172; 41 Pac. 445; 91 Am. St. R. 558; 7 N. W. 704; 14 Ia. 170.

*Attorney General J. Fraser Lyon,* contra, cites: *Both surety and principal are liable for public revenues collected:* 69 Vt. 401; 22 Ia. 305; 91 Am. St. R. 558.

January 18, 1912. PER CURIAM. This appeal is from an order sustaining demurrer to the fourth and fifth paragraphs of the answer, which order is herewith reported with exceptions thereto.

After due consideration we are satisfied that the exceptions should be overruled for the reasons stated in the order.

Judgment affirmed.